UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MIGUEL CRUZ,                                                 :    **MEMORANDUM**
                                                             :    **DECISION AND ORDER**
                               Plaintiff,                    :
                                                             :    11 Civ. 2131 (BMC)
           - against -                                       :
                                                             :
JONATHAN REINER *et al.*,                                    :
                                                             :
                               Defendants.                   :
------------------------------------------------------------ X

**COGAN**, District Judge.

In this action under 42 U.S.C. § 1983, plaintiff contends that he was held in pretrial detention without food, water or use of a bathroom for five days. The question raised by defendants' motion for summary judgment is whether plaintiff can raise an issue of fact based solely on his uncorroborated version of the events where (a) he contradicted a material portion of his allegations in his deposition; and (b) contemporaneously prepared business records of the police department, including some prepared by officers uninvolved in this case, directly refute his version of the facts. I hold that no reasonable jury could find for plaintiff under these circumstances, and therefore grant defendants' motion for summary judgment.

**DISCUSSION**

I have previously set forth the facts as alleged by plaintiff in a decision partially granting defendants' prior motion for summary judgment, Cruz v. Reiner, No. 11 Civ. 2131 (E.D.N.Y. Aug. 5, 2013), familiarity with which is assumed. To summarize, that decision held that plaintiff had failed to raise a factual issue as to the deprivation of his constitutional rights from the time of

his arrest on February 22nd until at least February 23, 2010 at 8:16 p.m. The essential point of plaintiff's story is that he was arrested on February 22, 2010 and held in the District Attorney's office without food, water or the use of a bathroom until either February 27 or February 28. But in his deposition, plaintiff testified that during this period, when he was in custody at the District Attorney's office, he was repeatedly given water, access to a bathroom, and under his own version of the facts, he had never asked for food.

I granted permission to defendants to renew their motion for summary judgment if they could demonstrate as a matter of law that after February 23, 2010, plaintiff was no longer in custody in the District Attorney's office, as he claimed, but instead had been transferred to Central Booking and thus was no longer under the control of defendants in this action.

Defendants have accordingly renewed their motion. The documents submitted and the affidavits explaining them conclusively refute plaintiff's allegations that he was held at the District Attorney's Office after February 23, 2010. Central Booking maintains an intake log, confirming that he had arrived there for his arraignment between 7:43 p.m. and 7:58 p.m. The log entry was written and signed at Central Booking by a Detective Dauge, who has nothing to do with this case; he was merely in charge of escorting prisoners through Central Booking on the day in question. His personal memo book and affidavit confirm the Central Booking log. In addition, plaintiff received medical screening at Central Booking prior to his arraignment at 8:04 p.m. We know this from his medical screening form, which was time-stamped. The Central Booking lodging process was completed at 8:16 p.m.

Perhaps most importantly, Central Booking maintains "court pen log book" which show he remained there until 3:20 p.m. on February 25. Because that entry classifies him as a "holdover," we know he was there on February 24 as well. These logs do reflect that he was

2

taken back to the DA's office on February 25 at 10:44 a.m. by defendant Det. Cooke, but it also shows that he was back at Central Booking by 3:25 p.m. because that is when he was arraigned. Again, while Det. Cooke's personal memo book is consistent with these movements, the court's pen log book is not maintained by him or any other officer with any connection to this case. After his arraignment, we can rely on plaintiff's own version of what happened next. He admitted in his deposition that once he was arraigned, he was transported to Rikers Island.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000) (quoting Fed. R. Civ. P. 56(e)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999).

3

Where the plaintiff is *pro se*, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). The Second Circuit has thus stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).

Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. This is consistent with the express language of Rule 56 that a factual issue must be "genuine," not feigned or spectral, to warrant denial of a summary judgment motion. The requirement of detecting a *genuine* issue of fact finds substance in the principle that despite some evidence in opposition to a summary judgment motion, if "no reasonable jury could have believed" the opponent's version of the events, summary judgment is appropriate. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

Scott illustrates that just because a party opposing summary judgment submits a sworn statement giving his version of the events, a factual issue will not be deemed to exist if other evidence shows that the statement cannot be credited. In Scott, the plaintiff brought an action under 28 U.S.C. § 1983 after a police officer rammed the plaintiff's vehicle at high speed from

4

the rear, causing the plaintiff to crash and rendering him quadriplegic. Both the district and circuit courts denied the police officer's motion for summary judgment on qualified immunity grounds. These courts relied on plaintiff's pretrial testimony that although he was speeding and refusing to obey the police officer's direction to pull over, "there was little, if any, actual threat to pedestrians or other motorists, as the roads were mostly empty and [the plaintiff] remained in control of his vehicle," and that he had slowed for turns and intersections, and used his indicators for turns. Id. at 378, 127 S.Ct. at 1775 (internal citation omitted). The lower courts found corroboration for the plaintiff's testimony because the police department, in response to the defendant officer's radio alerts, had closed off the roadway so that the public could not enter. They reasoned that before a police officer could use what amounted to deadly force in such circumstances, there had to be some threat to the public, and that if a jury accepted the plaintiff's view that he was in control of his car and signaling properly on a road where the public was not present, then the police officer could be liable for the results of ramming him.

In reversing, the Supreme Court noted that the parties' sworn testimony was diametrically opposed as to the conditions of the chase, and that, normally, "[w]hen things are in such a posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." Id. Nevertheless, the Court observed that there was a "wrinkle in this case: existence in the record of a videotape capturing the events in question." Id. Based on its review of the videotape, the Court held that no reasonable jury could credit the plaintiff's version of the events, and that the plaintiff's testimony was therefore insufficient to raise a genuine issue of fact. It reached this conclusion even though Justice Stevens, in dissent, observed that "[r]ather than supporting the [Court's]

conclusion . . . the [video]tape actually confirms, rather than contradicts, the lower courts' appraisal of the factual questions at issue." Id. at 390, 127 S.Ct. at 1781.

As the disagreement between the majority and the dissent in Scott suggests, the principle that sufficient evidence can overcome an unsupported version of facts, while to be invoked sparingly, need not be confined to recordings because recordings themselves are rarely 100% conclusive. Other cases have rejected uncorroborated claims either because the plaintiff in those cases contradicted his own statements or because overwhelming documentary or neutral party evidence showed that a jury would be unreasonable in accepting the plaintiff's version of the events.

In Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011), for example, a Title VII case, the plaintiff opposed summary judgment solely on the basis of her affidavit and sworn deposition testimony. Not only did these contradict her own prior sworn statements, but the defendant "submitted competent and persuasive evidence" that refuted her position on summary judgment. Id. at 105. The Second Circuit affirmed the district court's order granting summary judgment because "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." Id. at 106.

Similarly, in Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005), the plaintiff claimed that the police had beaten him during his arrest without provocation. But because he had never mentioned the beating during his post-arrest confession or medical examinations, the Second Circuit held:

> While it is undoubtedly the duty of district courts not to weigh the credibility of
> the parties at the summary judgment stage, in the rare circumstance where the
> plaintiff relies almost exclusively on his own testimony, much of which is

6

> contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Id. at 554 (citation omitted). Accord, Bilan v. Davis, No. 11 Civ. 5509, 2013 WL 3940562 (S.D.N.Y. July 31, 2013); Taylor v. Ridley, 904 F. Supp. 2d 222, 232 (E.D.N.Y. 2012) ("this is one of those 'extraordinary cases' in which no reasonable factfinder could conclude in favor of plaintiff on his excessive force claim because that claim relies almost exclusively upon plaintiff's allegations in his complaint, which are unexplainedly inconsistent and contradictory with his testimony at the criminal trial and his deposition, at least in terms of the force allegedly used during his arrest, and are uncorroborated by any independent evidence in the record") (citation omitted); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 468-71 (S.D.N.Y. 1998) (Sotomayor, D.J.).

These cases compel the result here. The entirety of plaintiff's remaining claim is that he was held in the District Attorney's office for either four or five days with no water, food, or bathroom access. But we know from his own testimony that he in fact had water and bathroom access and that for the relatively brief time he was in the District Attorney's office, on February 22nd and 23rd, he never asked for any food (accepting his version of the events; the officer states that he offered plaintiff food and plaintiff refused it). We also know, from unimpeached business records, that plaintiff was at Central Booking from February 23rd to through February 25th (with one brief return back to the District Attorney's office), and we also know, again from plaintiff's own testimony, that after his arraignment on February 25th, he was taken to Rikers Island, with no indication that he ever returned.

7

I cannot see empaneling a jury based on plaintiff's self-contradicted and documentary evidence-contradicted story. It seems highly likely that a jury would reject it, but if it did not, I would have no choice to but to set it aside because it would be unreasonable. Defendants have met the standard for obtaining summary judgment.

## CONCLUSION

Defendants' motion for summary judgment is granted. The Court certifies that an appeal from this decision and order would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal. The Clerk is directed to enter judgment against plaintiff and in favor of defendants dismissing the complaint.[1]

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 16, 2013

---

[1] Plaintiff has filed over twenty motions during the course of this case and at least one interlocutory appeal to the Circuit, as well as an appeal to me from a discovery ruling by Magistrate Judge Gold. A few of plaintiff's motions remain outstanding. Of note is his motion for an extension of time [196] to file opposition to defendants' summary judgment motion. I am denying that motion for a number of reasons: (a) I had already granted him a lengthy extension to put in opposition; (b) he already made a submission that appears to be opposition [186]; (c) he has moved for summary judgment himself at least three times, one of which is still pending; (d) although claiming that he needs more time, plaintiff, simultaneously with filing his motion for an extension, filed a motion for reconsideration [195] of my prior Order granting partial summary judgment, which addresses the same issues; (e) plaintiff's prior filings have not been illuminating; and (f) I see no way that plaintiff could overcome his own contradictions or the business records that defendants have submitted. The remainder of plaintiff's pending motions are denied as moot or, like the motion for reconsideration, without merit.